**FILED**

**4:46 pm, Aug 28, 2020**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BILLIE JEROME ALLEN,
              Petitioner

    .v

WARDEN,
    Respondent.

No. 2:20-cv-00406-JRS-MJD

" CAPITAL CASE "

---

### RESPONSE TO COURT'S ORDER TO SHOW CAUSE

---

Petitioner Billie Allen (Allen), pro se, filed a petition to this Court pursuant to 28 U.S.C. 2241. Succinctly summarized, Allen's petition challenges the unconstitutionality of Allen's confinement, custody, conviction, and the continued execution of Allen's unconstitutional sentence. All of which were unconstitutionally obtained by the government's failure to submit to Allen's grand jury the mandatory statutory aggravating factors and capital mens rea, for imposition of capital charges, proceedings, punishment, and the execution of a capital sentence. In clear violation of the fifth Amendment's demand upon both prosecutors and Courts that "[n]o person", including Allen, "shall 'be held to answer for a capital [] crime', unless on a presentment, 'or an indictment of a Grand Jury.'" (quoting U.S. Const. amend. V) (emphasis added); see also Gamble v United States, 204 L. Ed 2d 322,350 (2019) (finding there's "no legitimate reason why a court may privilege a demonstrably erroneous interpretation of the Constitution 'over the Constitution itself.'") (emphasis added) (Thomas, J., concurring, writing seperately).

Also, Allen's petition, within the structure of the claim, challenges the unconstitutionality of Allen's confinement, custody, charges, conviction, and the continuous execution of Allen's unconstitutional sentence, because the omitted statutory aggravators were legally relevant, and used against Allen at trial to constructively amend Allen's indictment to broaden the possible basis for conviction from that which appeared in Allen's indictment. While doing so impermissibly broadened Allen's operative timeline, and where the government adduced proof at Allen's trial of a 12-gauge shotgun that Allen was never indicted for, nor charged with. But the jury was allowed to convict and sentence Allen to death for, which was a "fatal error." See United States v Leichtnam, 948 F.2d 370,379 (7th Cir. 1991) ("The possible basis for conviction are limited to those contained in the indictment. . . . New ones may not be added without resubmitting the indictment to a grand jury

1

whether they are added literally, by a formal amendment to the indictment or constructively-
'by proof at trial of a crime not clearly and fully charged' . . . which would allow a
conviction [and sentence] on grounds not charged by the grand jury.") (emphasis added);
see also Stirone v United States, 361 U.S. 212, 218-19 (1960) ("'The right to have the
grand jury make the charge on its own judgment is a substantial right' which 'cannot be
taken away with or without court amendment' . . . [and] 'because of the court's admission
of evidence and under its charge this might have been the basis upon which the trial jury
convicted petitioner.' If so, he was convicted on a charge the grand jury never made
against him. "This was fatal error.'") (emphasis added).

Thus, making Allen's custody, confinement, and the continued execution of Allen's
unconstitutional sentence a "violation of the constitution or laws of . . . the United
States", Samirah v O'Connell, 335 F.3d 545, 549 (7th Cir. 2003), and requires an immediate
and/or speedier release. Or, "a new trial' should be granted "as a matter of right."
Weaver v Massachusetts, 137 S. Ct. 1899,1914 (2017).

This Court has ordered Allen to show cause for why his petition should not be dis-
missed for lack of jurisdiction. For the following reasons, Allen shows cause for why
this Court has jurisdiction under 2241's Saving Clause to entertain, address, and grant
the relief sought in the petition before this Court.

## LEGAL STANDARDS

Allen has sought postconviction relief in this Court under 28 U.S.C. 2241, where
Congress has created within 2255 a narrow exception to the "general rule' that requires
a petitioner to bring a collateral attack under 2255 - the Savings Clause.

Under the Savings Clause, a petitioner can seek a writ of habeas corpus through
2241 if the petitioner can show "that the remedy by [2255] motion is inadequate or ineff-
ective to test the legality of his detention." 28 U.S.C. 2255(e) Where unlike a 2255 motion,
which must be in the district where the sentence was imposed, a 2241 motion must be brought
in the district where the prisoner is in custody. Webster v Daniels, 784 F.3d 1123,1124
(7th cir. 20150 (en banc). And Allen submits to this Court that he is in custody within
this Court's 2241 jurisdiction, as a prisoner on Federal Death Row, in Terre Haute, Indiana.

A federal petitioner may seek relief under 2241 "[o]nly in rare circumstances
where 2255 is inadequate or ineffective to test the legality of the prisoner's detention

2

. . . ." Light v Caraway, 761 F.3d 809,812 (7th Cir. 2014). Where 2255 is inadequate or ineffective as applied to a specific case only when there is "some kind of structural problem with section 2255." Webster, 784 F.3d at 1136.

A structural problem with 2255 requires "something more than a lack of success with a section 2255 motion." Id. It must "foreclose[] even 'one round of effective collateral review,' [on the issue] unrelated to the petitioner's own mistakes." Poe v LaRiva, 834 F.3d 770,773 (7th cir. 2016) (emphasis added). And 2255 is inadequate or ineffective where the court finds that the petitioner did not have a "reasonable opportunity [in a prior 2255 proceedings] to obtain 'a reliable judicial determination of the fundamental legality of his conviction and sentence.'" Chazen v Marske, 938 F.3d 851,856 (7th Cir. 2019) (alteration in original) (emphasis added).

The Seventh Circuit has found a structural problem with 2255 in three instances:

    1). In re Davenport, 147 F.3d 605,610 (7th Cir. 1998).

    2). Garza v Lappin, 253 F.3d 918,920 (7th Cir. 2001).

    3). Webster, 784 F.3d at 1139 (When the claim "would reveal that 'the Constitution categorically prohibits a certain penalty.'").

Allen principally relies on Webster to show cause for why this Court should exercise its jurisdiction under 2241's Savings Cluse, where for the first time, the Seventh Circuit would conclude that a constitutional claim could pass the threshold of the Savings Clause. Webster challenged that his death sentence was barred by Atkins v Virginia, 536 U.S. 304 (2002), where the Eighth Amendment forbids the execution of a person with an intellectual disability. And although Webster raised an Atkins, claim in his 2255 proceeding, he sought to present "newly discovered evidence" to support that claim in his 2241 petition. Webster, 784 F.3d at 1125.

The Seventh Circuit found that "there is no categorical bar against resort to section 2241 in cases where new evidence would reveal that 'the Constitution categorically prohibits a certain penalty.'" Id. at 1139 (emphasis added). Where the structural problem identified by the Seventh Circuit was based on at least (2) concerns. First, the Court found 2255(h)(1) only allows a second or successive 2255 motion if newly discovered evidence

3

meets a certain threshold to demonstrate that the petitioner is not guilty of the offense. Id. at 1134-35, 1138. It does not allow for such motions if the petitioner is ineligible to receive his "sentence." Id. Second, the Court found that Congress could not have contemplated whether claims of categorical ineligibility for the death penalty should be permitted in second or successive 2255 motions because the relevant cases - Atkins, and roper v Simmons, 543 U.S. 551 (2005) had not been decided when 2255 was enacted. Webster, 784 F.3d at 1138 ("[T]he fact that the Supreme Court had not yet decided Atkins and Roper at the time AEDPA was passed 'supports the conclusion that the narrow set of cases presenting issues of Constitutional ineligibility for execution is another lacuna in the statute.'") (emphasis added) Id. at 1139 ("In Webster's case, the problem is that the Supreme Court has now established that 'the Constitution itself forbids the execution of certain people': those who satisfy the criteria for intellectual disability that the Court has established, and those who were below the age of 18 why they committed the crime.").

## ALLEN'S PETITION CHALLENGES THE LEGALITY OF HIS DETENTION AND THE EXECUTION OF ALLEN'S UNCONSTITUTIONAL SENTENCE

This Court has held that "[a] motion seeking relief on grounds concerning the execution but not the validity of the conviction and sentence . . . may not be brought under 2255 and therefore falls into the domain of 2241 Valona v United States, 138 F.3d 693,694 (7th Cir. 1998).

First, Allen's claims clearly challenge the legality of Allen's detention and the execution of Allen's unconstitutional sentence, where Allen invokes the Fifth Amendment's demand upon both prosecutors and courts that "[n]o person", including Allen, "shall be 'held to answer for a capital []crime, 'unless' on a presentment, or an indictment of a Grand Jury."(quoting U.S. Const. amend. V.) (emphasis added). When "held to answer for", in the context of how Allen presents his claim in his petition, can only be attributed to challenging the legality of Allen's detention and the execution of Allen's unconstitutional sentence; after Allen's trial, and after Allen's conviction.

Second, the district in which Allen was sentenced no longer has the jurisdiction to determine whether the duration, nor the continuous execution of Allen's sentence is unlawful or unconstitutional. Then, Allen is in custody within this Court's sole jurisdiction, not where only this Court can determine, whether, after Allen's trial, after Allen

4

Allen's conviction, and after the Eighth Circuit has sentenced Allen to serve the duration of his time and the execution of his sentence here; 7th Cir., whether the duration of Allen's time and the sentences that Allen's custodians have been tasked to carry out allow Allen's "custodians" to "inflict" upon Allen "an unconstitutional sentence." Webster,   F.3d at  . Which in Allen's case, the Fifth Amendment clearly prohibits, because "unless on a presentment, or 'an indictment of a Grand Jury", then "[n]o person", including Allen, "shall 'be held to answer for a capital [] crime'"; the duration of time, nor the execution of a sentence that would spawn from such a violation.

Allen's claims are those that clearly challenge the duration of his time and the execution of Allen's continuous unconstitutional sentence.

## THE STRUCTURAL PROBLEMS WITH 2255
## FOR ALLEN

In Webster, The Seventh Circuit "took great care to assure that its holding was narrow in scope", Poe, 834 F.3d at 774, that it limited its holding for a constitutional claim that invokes the Savings Clause to "have a limited effect on future habeas corpus proceedings", and where only "a rare case" will qualify. Webster, 784 F.3d at 1140. Notwithstanding the high bar set by Webster, the claims within Allen's petition fit within the the narrow scope of Webster, they ensure that any favorable holding by this Court on Allen's claim will too be "narrow in scope", Id, that it will have "a [very] limited effect on future habeas corpus proceedings" as not to overburden this Court with petitions that will try to stretch the parameters beyond those in Allen's claim, and Allen's distinguishes itself as "a rare case" because of its facts and circumstances. Id. Where Allen's petition then asks whether "there is a categorical bar against resort to section 2241 in cases" when the Fifth Amendment of "the Constitution" and already established precedent case law "categorically prohibits a certain penalty", Id. at 1139, which makes Allen "categorically ineligible for the death penalty." Webster, 784 F.3d at 1138-40.

The structural problem identified by the Seventh Circuit in Webster was based on (2) concerns that Allen now also relies on. First, 2255(h) did not and does not permit Allen to file the claim set forth in his 2241 petition, because "issues that were raised and decided on direct appeal 'cannot be relitigated in a 2255 motion." Allen v United States, U.S. Dist. LEXIS 4985 (8th Cir. May 10, 2011) (quoting United States v Wiley, 245 F.3d 750, 752 (8th Cir. 2001).[1] Which "foreclose[d] even one round of 'effective collateral

---

[1] Allen's circumstances are rare being that Allen was either forced to present his claim

5

review', unrelated to [Allen's] own mistakes." Poe, F.3d at 773 (emphasis added). Then 2255(h)(1) only allows a second or successive 2255 motion if newly discovered evidence meets a certain threshold to demonstrate that the petitioner is not guilty of the **"offense."** Id. at 1134-35,1138. But it does not allow for such motions if the petitioners is ineligible to receive his "sentence." Id.

Second, Congress would not have contemplated whether claims of categorical ineligibility for the death penalty would be necessary or should be permitted in a second or successive 2255 motion, because the day would come when both prosecutors and courts would decide to ignore the clear demand by the fifth Amendment upon them that "[n]o person", including Allen, "shall be held to answer for a capital [] crime, unless on a presentment, or an indictment of a Grand Jury." Where specifically in Allen's case, both the prosecutor and the Eighth Circuit have disregarded the Fifth Amendment, stripped Allen's grand jury of their Constitutional duty and authority, stepped outside of the Eighth Circuit and the prosecutor's jurisdictions and into the role of Allen's grand jury by speculating that "'if [Allen's] grand jury had been asked to charge' the grave-risk-of-death-to-others statutory aggravating factor[s]", which Allen's grand jury didn't charge, then Allen's grand jury "would have done so." United States v Allen, 406 F.3d 940, 948 (8th Cir. 2004) (emphasis added). When there's "no legitimate reason why 'a court may privilege a demonstrably erroneous interpretation of the Constitution over the Constitution itself.'" Gamble, 204 L. Ed 2d at 350 (Thomas, J., concurring, writing seperately) (emphasis added).

Lastly, Congress could not have contemplated whether claims of categorical ineligible for the death penalty would be necessary or should be permitted in second or successive  2255 motions because prosecutors and courts would not only ignore what the Constitution demands, and prohibits with those demands. But that such actions should be permitted in a second or successive 2255 motion because prosecutors and courts would also ignore

---

on direct appeal, because Allen preserved the claim before trial, and claims that are preserved before trial must be filed on direct appeal in order to then preserve the claim for any possible need for relief that might be needed thereafter. See Weaver, 137 S. Ct. 1910 ("Thus, in the case of a structural error 'where there is an objection to trial and the issue is raised on direct appeal' the defendant generally is 'entitled to automatic reversal regardless of the error's actual effect on the outcome." . . . Because when "a strutural error 'is preserved and raised on direct appeal the balence is in the defendant's favor', and 'a new trial generally will be granted as a matter of right.'") Id. at 1914 (emphasis added). Or Allen could have not presented the preserved claim on direct appeal, which would have waived the claim from "all" future relief, including it being raised for the first time in a 2255 motion. Congress could not have contemplated when determining whether claims of categorical ineligibility for the death penalty should be permitted in a second or successive 2255, that a situation would force petitioners to present a claim on direct appeal in order to "not waive it", but that at the same time, it too would bar that same claim from receiving any further relief because the law requires that claim to be raised at the earliest stage; direct appeal. Thus, showing a structural problem with 2255 that highlights "another lacuna in the statute." Webster, 784 F.3d at 1138.

precedent case law, reaffirming the Constitution, the Constitutional role of the grand jury, the grand jury's jurisdiction, and the Constitutional role of the grand jury over those of the prosecutor and the courts; see Stirone  v United States, 361 U.S. 212, 215-16 (1960); Russell v United States, 369 U.S. 749,770 (      ); ex parte Bain, 121 U.S. 1, 10 (1887); Costello v United States, 350 U.S. 359 (1956); United States v Dionisio, 410 U.S. 1, 16-17 (1973); and Vasques v Hillery, 474 U.S. 254, 263 (1986), which were decided before the "AEDPA was passed[,] [and] supports the conclusion that the narrow set of cases presenting issues of Constitutional ineligibility for executions is another lacuna in the statute." Webster, 784 F.3d at 1138.

## 2255 IS INADEQUATE OR INEFFECTIVE BECAUSE ALLEN HASN'T HAD A REASONABLE OPPORTUNITY TO OBTAIN "A RELIABLE JUDICIAL DETERMINATION OF THE FUNDAMENTAL LEGALITY OF HIS CONVICTION AND SENTENCE"

Allen agrees with the Court, where in its Order it states that "[a] federal prisoner is not entitled to file an unlimited number of 2241 petitioners." Where the Court went further to state, "[o]n the contrary,

> "No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255." (quoting 28 U.S.C. 2244(a)).

In support of a possible denial of Allen's petition, the Court then points out that "[t]his Court denied Mr. Allen's prior 2241 petition on May 18, 2020. Allen v Daniels, 2:16-cv-00257-JMS_MJD, dkt. 48 (S.D. Ind. May 18, 2020), [and] "because 'the legality of [Mr. Allen's] detention has been determined . . . by a judge . . .of the United States on a prior application for a writ of habeas corpus', he cannot litigate another 2241 petition challenging his conviction or sentences 'except as provided in [28 U.S.C.] 2255.'" (quoting 28 U.S.C. 2244(a)).

Allen aks this Court to take into consideration that the AEDPA "stops short of imposing a complete bar on federal court 'relitigation of claims already rejected'", but requires

7

that the petitioner show that the ruling "was so lacking in justification that there was an error well understood and comprehended in 'existing law' beyond any possibility of fairminded agreement." Harrington v Richter, 562 U.S. 86, 131 (2011) (emphasis added). And "AEDPA" established that another court may grant habeas relief on a claim adjudicated on the merits only if that adjudication "(1) resulted in a decision that was so contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented."

First, as Allen points out in his petition, the claims presented do not fall under harmless error analysis, where Allen shows exactly how, under Fulminante, that the admitted error and/or defect is structural, and how the "defect affect[ed] the framework within which" Allen's "trial proceed[ed], rather than simply an error in the trial process itself." Fulminante, 499 U.S. at 309-10. See generally dkt. 1, pg. 8-10.

Second, as Allen points out in his petition, both the government and the Eighth Circuit concede that Allen's indictment "cannot be reasonably construed to charge a [single] statutory aggravating factor, 'as required for imposition of the death penalty', it is 'constitutionally deficient to charge a capital offense," Allen, 357 F.3d at 747, and that "'it is clear' that 'Allen's indictment "suffers" a Fifth Amendment defect.'" Allen, 406 F.3d at 943-44 (emphasis added). Because "[t]he prosecutor 'did not ask the grand jury to charge the statutory aggravating factor[s].'" Id at 762. Which makes both the continuous duration and execution of Allen's sentences unconstitutional, and both immune from being capital in nature and effect; pursuant the Fifth Amendment's demand upon both prosecutor's and courts that "[n]o person", including Allen, "shall be 'held to answer for a capital []
crime, "unless" on a presentment, or 'an indictment of a Grand Jury.'" (quoting U.S. Const. amend. V) (emphasis added). Thus, putting the Eighth Circuit's finding and holding in clear conflict with the Constitution itself; what it demands, and what it prohibits. See generally dkt 1.

Third, as Allen points out in his petition, while the Eighth Circuit acknowledges that "it is clear that Allen's indictment suffers a Fifth Amendment defect", Id. it still made an unreasonable determination of the law that "was so lacking in justification that there was an error well understood and comprehended in [the Constitution and] in existing law beyond any possibility of fairminded agreement", Richter, 562 U.S. at 131, by holding the defect and violation was "harmless". Where the Eigth Circuit would base its ruling, not on any law, nor the Constitution itself. The Eighth Circuit's holding would be based

solely on the Eighth Circuit assuming that "'if [Allen's] grand jury had been asked' to 'charge the garve-risk-of-death-to-others statutory aggravating factors", that the Eighth Circuit can guarantee that Allen's grand jury "would have done so." Allen, 406 F.3d at 948. This assuming process adopted by the Eighth Circuit is clearly in conflict with the Supreme Court and the Constitution itself.

Again, the Fifth Amendment itself doesn't ask, but demands that "[n]o person", including Allen, "shall 'be held to answer for a capital [] crime', unless on a presentment, 'or an indictment of a Grand Jury.'" (quoting U.S. Const. amend. V). In no way does such straight forward language .suggest in the least that what the Fifth Amendemnt demands would allow either a prosecutor nor the Eighth Circuit to speculate, guess, or infer that Allen should "be 'held to answer for a capital [] crime,'" without "an indictment of a Grand Jury." And there's clearly 'no legitimate reason why a court may privilege a demonstrably erroneous interpretation of the Constitution 'over itself.'" Gamble, 204 L. Ed 2d at 350 (Thomas, J., concurring, writing seperately) (emphasis added).

Yes, there are times when words within the Constitution and within its Amendments will be in aid of a court's interpretation and/or clarification when trying to apply the Constitution and its Amendments fairly and corectly. But in this case, "unless", in the context of how it's proceeded by "[n]o person" including Allen, "shall 'be held to answer", makes the Clause remarkably clear in its demand, and even more clear in what it prohibits if those demands aren't followed. That "unless' the grand jury gives its authority "to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offensë..." Vasques, 474 U.S. at 263. Then "no person", including Allen, "shall 'be held to answer for" a conviction, the duration of time, the execution of that time, nor the execution of any punishment that would spawn from a violation of such a straight-forward demand. Because such a violation would be unconstitutional and fundamentally unfair to any defendant, and the "effects of the error are simply too hard to measure." Weaver, 137 S. Ct. at 1908.

Fourth, as Allen points out in his petition, the Eighth Circuit's holding proves that the Eighth Circuit has stepped out of their respected jurisdiction and into that of Allen's grand jury. Where it's well understood that Allen's grand jury belongs to no branch of government, that Allen's grand jury is a "constitutional fixture 'in its own right,'" United States v Chanen, 549 F.2d 1306, 1312 (CA9) (quoting Nixon v Sirica, 159 U.S. App. DC. 58, 70, n. 54 (1973)), (emphasis added), that Allen's grand jury "presupposes an investigative body 'acting independently of either prosecuting attorney or judge'",

Dionisio, 410 U.S. at 16-17 (quoting Stirone, 361 U.S. at 2180 (emphasis added), that "'no judge' presides to monitor its proceedings, it 'deliberates in secret', and 'may determine **alone** the course of its inquiry'", Calandra, 414 U.S. at 343 (emphasis added), and that there is nothing that gives a prosecutor nor judge the "authority for looking into and revising the judgment of the grand jury upon the evidence.'" Costello, 350 U.S. at 362-63 (emphasis added). Because "[i]f it lies within the province of a court to change the charging part of an indictment 'to suit its own notions of what it ought to have been.' or 'what the grand jury **would have probably have made it if their attention had been called to suggested changes**', the great importance which the common law attaches to an indictment 'by a grand jury', as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer', may be frittered away until its value is almost destroyed." ex parte Bain, 121 U.S. at 10 (emphasis added).

Fifth, as Allen points out in his petition, with the Eighth Circuit holding Allen's claim "harmless' Allen, 406 F.3d 940, and then resting it's holding of the fact that "some", but not all of the omitted-from-Allen's-indictment; statutory aggravating factors were "vaguely" presented in the Government's Notice Of Intent To Seek The Death Penalty ("NOTICE") and not in the indictment, shows the unreasonableness of the holding on its face.

If this were a State case and the prosecutor sought to enhance Allen's non-capital case allegations, purported facts, elements, evidence, charges, duration of time, execution of a sentence, and then enhance Allen's punishment to be capital in nature, and the State bypassed Allen's grand jury by only submitting the statutory aggravating factors in the Government's "NOTICE". (Which would essentially make the "NOTICE" the functional equivalent of the State's "Bill Of Particulars"). Then doing so would not only be Constitutional. It would also be sufficient for Allen to "be held to answer for a capital [] crime" in the State. Because the Supreme Court, every other Circuit, including this Circuit, has held "that 'no federal right to a grand jury exists in State prosecutions' [and] it does 'not require **the States** to observe the Fifth Amendment provisions for presentment or indictment by a grand jury.'" Alexander v Louisiana, 405 U.S. 625,633 (1972).

Yet, this is clearly not a State case. This is a Federal case and the government sought to seek the federal death penalty against Allen. Where as a Federal case, when seeking the death penalty, Allen was and still is afforded the protection of the Fifth Amendment's demand that "]n]o person", including Allen, "shall 'be held to answer for a capital [] crime, **unless** on a presentment, or 'an indictment of a Grand Jury.'" (quoting U.S. Const. amend. V). And the fact "[t]hat the Constitution outranks other sources of law is

10

inherent in its nature." <u>Gamble</u>, 139 S.Ct. 1960, (thomas, J. concurring, writing seperately); see <u>Kesavan, The Three Tiers Of Federal Law</u>, 100 NW. U.L. Rev. 1479, 1499, n. 99 (2006) (arguing that "[i]t is unneccessary for the Constitution to specify that it is superior...').

Sixth, and lastly. As Allen points out in his petition, the Eighth Circuit's holding is unreasonable because Allen's claim indentifies a constructive amendment to Allen's indictment, where the government would present the omitted statutory aggravating factors at Allen's trial, which were legally and essentially relevant, and broadened the possible basis for a conviction from that which appeared in Allen's indictment to include an earlier and later than operative timeline, and where the government adduced evidence at Allen's trial of a 12-gague shotgun that Allen was never indicted for, nor charged with. Yet, the jury was allowed to convict and sentence Allen to death for. See generally dkt. 1, pg. 10-20.

Allen would start by highlighting how the indictment that the government submitted to his grand jury would limit the operative timeline to stay within the parameters of "March 17, 1997." (quoting Allen's indictment). Yet, at Allen's trial, the prosecutor would inform Allen's jury that "what the Government's evidence w[ould] be", would construtively amend the parameters of the operative timeline to be "during the time period 'between' fall of 1996 and March of 1997"; "during the week or '10 days before the robbery'"; "days before the robbery"; "on that very [March 13, 1997]"; "That Saturday night before the robbery [March 15, 1997]"; "Between sunset on the evening of March 16"; and even "after the robbery" in "Forest Park". Where Allen's indictment gives no indictation that the "nature and cause of the allegation[s]" (quoting U.S. Const. amend. VI) would stray months before and sometime after what was alleged and charged in Allen's indictment. See generally dkt. 1, pg 10-20.

Allen would also highlight in his petition how, in the indictment, the prosecutor specifically charged that "Billie Jerome Allen . . .'knowingly used and carried a firearm during and in relation to a crime of violence' which may be prosecuted in a court of the United States, 'that is', bank robbery as alleged in Count 1 of this indictment.' With "that is" being the key expression that would limit the amount of firearms that Allen was actually being indicted for, could be charged with, and/or in what manner the jury could be told that the firearm was allegedly "used and carried." Because "that is" operated in the exact manner and has the same legal effect of the words "to wit", and made whatever follows an essential element of the offense in which the firearm was allegedly "used and

and courts that "[n]o person', including Allen, "shall 'be held to answer for a capital [] crime', unless on a presentment, or an indictment of a Grand Jury,'" to suggest that the Eighth Circuit can guess, specualte, nor hypothesize that "'[i]f' Allen's grand jury had been asked" to charge something they were never asked to charge, then Allen's grand jury "would have done so." Where the word "unless" in the Fifth Amendment forbids such specula- tion by any court, and shows the Eighth Circuit's holding "was so lacking in justification that there was an error well understood and comprehended in 'existing law' [Stirone] beyond any possibility of fairminded agreement." Richter, 562 U.S. at 131. Which has "resulted in a decision that was so contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by [the Constitution] [and] the Supreme Court of the United States, [and] resulted in a decision that was based on an unreasonable deter- mination of the facts in light of the evidence presented."

AEDPA established that another court may grant habeas relief on a claim adjudicated on the merits. Allen's petition and the claims therein show cause for why this Court should entertain this petition and grant the relief sought. Because as Supreme Court Justice Thomas would rightfully point out in Gamble, that "judicial dicisions may incorrectly interpret the law, and when they do, subsequent courts 'must confront the question when to depart from them.'" Thomas would go on to state that "[a] demonstrably incorrect judic- ial decision, by contrast, is tantamount to 'making law', and adherring to it both dis- regards the supremacy of the Constitution and perpetuates a usurpation of the ligislative power." 139 S. Ct. at 1984-85. And Justice Thomas, quoting 1 J. Kent, Commentaries on American Law, 439 (1826) would state that "[i]f . . . any solemnly adjudged case can be shown to be founded in error, it is not doubt the right 'and the duty of judges who have a similar case before them, to correct the error." Allen's claim presents such an error in need of correction that the Constitution contradicts.

## ALLEN IS CATEGORICALLY INELIGIBLE
### TO RECEIVE THE DEATH PENALTY

As Allen points out in his petition, Allen is categorically ineligible to receive the death penalty. Unlike Webster, where the Seventh Circuit held that "the problem is that the Supreme Court 'has now established that 'the Constitution' itself forbids the execution of certain...'" Id. at 1139.(emphasis added). The Constitution has and continues to establish that "the Constitution itself forbids the execution of certain people" Id; those who, "unless on a presentment, or an indictment by a Grand Jury" . . . "shall [not] be held to answer for a capital [] crime.'"

carried." See <u>United States v Willoughby</u>, 27 F.3d 263,266 (7th Cir. 1994). ("'To wit' is an expression of the limitation which, as our cases indictate, makes what follows an essential part of the charged offense.").

Only two firearms were "used and carried" . . . "during and in relation to a crime of violence" . . . "'that is', bank robbery as alleged in Count 1 of [Allen's] indictment." Where the firearms used in the crime was a Russian SKS and a Chinese SKS. Yet, at Allen's trial, the prosecutor, in his opening statements, would tell Allen's jury that "[t]he evidence is going to show you that "all 'three' firearms" . . . "were involved in this crime', and then adduced a 12-gauge shotgun as evidence against Allen at trial that wasn't a part of the robbery, nor did Allen use or carry it. But the jury was allowed to convict Allen for the 12-gauage shotgun, and sentence Allen to death for it.

As Allen points out in his petition, the proper analysis that should've been used by the Eighth Circuit should've been the Constitution itself first, and then the Supreme Court's holding in <u>Stirone</u>. Where in <u>Stirone</u>, the Supreme Court held that "the right to have the grand jury 'make the charge on its own judgment is a substantial right' which cannot be taken away with or without court amendment", and "'because 'the court's admission of evidence' and under its charge this 'might have been the basis upon which the jury never made against him.' this was 'fatal error.'" 361 u.s. at 218-19 (emphasis added). And "[d]eprivation of such a basic right 'is far too serious' to be treated as nothing more than a variance and 'then dismissed as harmless error.'" 361 U.S. at 217 (emphasis added).

In <u>Leichtnam</u>, the Seventh Circuit has echoed the Supreme Court in <u>Stirone</u> when it held that a charge was improperly amended where the government charged use and possession of a firearm, "to wit a Mossberg rifle", but at trial adduced proof of the Mossberg rifle along with two other weapons. The Court found that the government's proof impermissibly broadened the indictment and violated the defendant's rights. <u>Id</u>. at 379-81. Similary, in <u>United States v willoughby</u>, 27 F.3d 263 (7th Cir. 1994), the Seventh Circuit held that it was improper for the government to charge the defenadnt with using and carrying a firearm in relation to a drug trafficking crime, "to wit"; the distribution of cocaine", and then prove at trial that used and carried a weapon in connection with the possession with intent to distribute. <u>Id</u>. at 266-67.

Neither the Constitution itself, nor any Supreme court precedent case law supports the Eighth Circuit's interpretation of the Fifth Amendment's demand upon both prosecutors

13

Where the Seventh Circuit acknowledges "that the Supreme Court 'has now established' that the Constitution itself forbids the execution of certain people". The Constitution, in the "1800's" set forth the demand that "[n]o person shall 'be held to answer for a capital [] crime'", and established the criteria that "unless on a presentment, or an indictment of a Grand Jury", then whatever followed was something that "[n]o person shall 'be held to answer for.'" And because the government did not obey the Constitution's demand to make Allen's charges, purported facts, elements, evidence, custody, confinement, the duration of time, the execution of Allen's sentence, and the possibility of punishment one that was death eligible "without a presentment or indictment of a grand jury". Then Allen clearly falls within the rare types of persons who are "categorically ineligible for the death penalty". And the Constitution of the United States forbids Allen's detention as a prisoner on federal death row, it forbids the continued execution of Allen's unconstitutional sentence, and it forbids Allen from being eligible for the death penalty.

<u>CASE-SPECIFIC FACTORS THAT MAKE
ALLEN'S CASE "RARE", WOULD ENSURE
ANY HOLDING IN FAVOR IS NARROW IN
SCOPE, AND "WILL HAVE A 'VERY'
LIMITED EFFECT ON FUTURE HABEAS
CORPUS PROCEEDINGS</u>

Allen's circumstances are "rare" because Allen is one of the few people on Federal Death Row, who, before trial, would object to the Fifth Amendment defect and constructive amendment before trial, and raise the issue on direct appeal. Then, both the government and the Eighth Circuit have and continue to concede that Allen's "indictment cannot 'be reasonably construed to charge a statutory aggravating factor', as required for imposition of the death penalty, it is 'constitutionally deficient to charge a capital offense'", <u>Allen</u>, 357 F.3d at 747 (emphasis added), and that "'it is clear' [Allen's] indictment 'suffers' a Fifth Amendment defect.'" <u>Id.</u> (emphasis added). Because as the Eighth Circuit would point out, "[t]he prosecutor 'did not ask the grand jury to charge the [grave risk of death] statutory aggravating factor.'" <u>Id.</u> at 762. (Hanson, J., dissenting) (emphasis added). Which makes Allen's custody unconstitutional, and immune from being capital in nature and effect; pursuant the Fifth Amendment's demand that "[n]o person", including Allen, "shall 'be held to answer for a capital [] crime', unless on a presentment, 'or an indictment of a Grand Jury.'" (quoting U.S. Const. amend. V) (emphasis added).

A favorable holding by this Court on Allen's petition and the claims therein would

14

be "narrow in scope". Id. Because Allen's claims would only apply to the specific Fifth Amendment claims raised in Allen's petition, it would only give rise to the exact claim where an objection is made before trial, and then where the claim is raised on direct appeal. Which will not open up the floodgates, will not dusturb current cases because most, if not all petitioners would not be able to meet the 3 prongs, and it will not have an effect on future habeas corpus proceedings. See United States v Pennington, 2003 U.S. Dist. LEXIS 24478 No. 3:01-cr-35-R, Slip op. at 3 (W.D. KY. feb. 21, 2003) (acknowledging a mandate from the Attorney General to seek a superseding indictment "in all pending Federal Death Penalty cases' so as to include the requisite intent and statutory aggravators); see also United States v Regan, 221 F. Supp. 2d 672,675 (E.D. VA. 2002) (Noting the government filed a superseding indictment "re-alleging" espionage charges and "including the statutory aggravating factors previously set forth 'only in the Notice Of Intent To Seek The Death Penalty'".).

In support of this Court "entertaining" this writ for the possibility of granting the relief sought, though not argued as a claim within the petition itself, Allen has presented this Court would evidence that proves Allen's innocence;[2] Nagative DNA results that exonerate Allen (APPENDIX G); Negative Gasoline results that exonerate Allen (APPENDIX H); Reports where witnesses saw someone other than Allen fleeing the crime scene (APPENDIX K); Report where a witness saw someone other than Allen plotting the crime with suspect Norris Holder (APPENDIX J); and a Transcript where a witness puts Allen at a shopping mall at the time the crime took place (APPENDIX L). Where the Supreme Court has held that "the 'substantial risk' of putting an innocent man to death is . . . 'sufficiently exceptional' to warrant utilization of . . . habeas jurisdiction." In re Davis, 557 U.S. 952,953 (2009).

This response to the Court's Order satisfies the requirements to warrant this Court utilizing its jurisdiction under 28 U.S.C. 2241's Saving Clause.

Respectfully submitted,

Billie J. Allen
P.O. BOX 33
Terre Haute, IN.
47808

---

2 All the evidence that Allen relied on to show this Court of his innocence can be seen in the Appendix section of Allen's petition, and is also refered to in the petition on pages 22-25.