**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

|  |  |  |
|---|---|---|
| Billie Jerome Allen, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00406-JRS-MJD |
| | ) | |
| Warden, | ) | Capital Case |
| | ) | |
| Respondent. | ) | |
| | ) | |

**PETITIONER'S REPLY TO RESPONDENT'S RESPONSE**
**TO PETITION AND ORDER TO SHOW CAUSE**

The Fifth Amendment provides, in pertinent part, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." Billie Allen was never indicted on a capital offense. The indictment against him did not include any aggravating circumstances that form the elements of a capital murder. Thus, the indictment returned by the jury only included charges of non-capital murder, which is a different offense than capital murder. Yet Mr. Allen's jury was allowed to sentence him to death, a sentence beyond the crimes he was charged with, and he remains incarcerated today in the restrictive conditions of death row and facing the possibility of execution. This death sentence violates Mr. Allen's Fifth Amendment rights.[1]

On direct appeal, a panel vacated his death sentence after concluding that the grand jury's failure to include any aggravating circumstances in the indictment violated the Fifth Amendment. *United States v. Allen*, 357 F.3d 745, 747 (8th Cir. 2004). After granting

---

[1] Mr. Allen objected to the deficiency of the indictment prior to trial, at sentencing, and on direct appeal. *See United States v. Allen*, 357 F.3d 745, 747 (8th Cir. 2004), *judgment vacated and rehearing en banc granted* (May 14, 2004).

reargument en banc, the Eighth Circuit recognized that the Supreme Court had not yet addressed the issues arising from the failure of the indictment to include any aggravating circumstance. *United States v. Allen*, 406 F.3d 940 (8th Cir. 2005) (en banc).  Nevertheless, the court agreed that the indictment was deficient and violated the Fifth Amendment.  *Id.* at 943.  But, rather than vacating the death sentence that resulted from this constitutional error, the court speculated that the grand jury *would* have included aggravating circumstances in the indictment, *if* they had been asked to, and thus found the error to be harmless.  *Id.* at 949.

The Eighth Circuit made its ruling without the benefit of the Supreme Court's later decision in *Alleyne v. United States*, 570 U.S. 99 (2013).  *Alleyne* held that sentencing factors that raise the level of punishment of a charged offense must be considered as elements of a greater, and different, offense.  Thus, an indictment that does not include these factors charges a different offense for which the enhanced sentence is unlawful.  *Alleyne* treats this as structural error, not subject to harmless error analysis.

Under *Alleyne*, Mr. Allen's trial, conviction, and death sentence are unlawful, as he was charged with non-capital, rather than capital, murder.  Because this case was tried as a capital case, the entire structure of the trial was affected.  Voir dire, for example, was conducted to produce a death qualified jury.  The Eighth Circuit's harmlessness finding constructively amended the indictment to add a new offense of capital murder and failed to consider the impact of the Fifth Amendment error on the trial as a whole.  *See Smith v. United States*, 360 U.S. 1, 10 (1959) (noting that use of an information rather than an indictment led to many difficulties that violated due process of law).  This was constitutional error.

Mr. Allen's petition raises serious constitutional questions concerning both the imposition and execution of his death sentence.  Mr. Allen could not seek relief, or challenge the constitutional violations inherent in the Eighth Circuit's harmless error ruling, through Section

2

2255, because the re-litigation bar precluded him from raising issues that had been addressed on direct appeal.  Because relief under § 2255 is structurally unavailable, habeas corpus under § 2241 is appropriate and available.

**1.     Capital murder is a different crime than non-capital murder, because aggravating circumstances function as elements of the crime of capital murder.**

In *Alleyne,* the Supreme Court, after reviewing the history of the relationship between crime and punishment, recognized that "[i]f a fact was by law essential to the penalty, it was an element of the offense."  570 U.S. at 109.  An indictment, devoid of allegations of aggravators and intent factors, does not charge a capital offense under federal law.  "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense. . . ."  *Id*. at 114-15.  Because the finding of an aggravating circumstance is a necessary requirement for making a defendant eligible for a death sentence, it is a part of a new offense (capital murder) and not merely a sentencing factor relating to the lesser offense (murder).  *Id*. at 115-16 ("The essential point is that the aggravating fact produced a higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime."); *see also Sattazhan v. Pennsylvania*, 537 U.S. 101, 112 (2003) (murder plus one or more aggravating circumstances is a separate offense from murder *simpliciter*); *Ring v. Arizona*, 536 U.S. 584, 609 (2002) (aggravating circumstances function as elements of a greater offense).

Based solely on the indictment against him, which did not contain any aggravating circumstance, the maximum sentence Mr. Allen faced was life imprisonment.  The elements of capital murder, which could have subjected him to a possible death sentence, were never charged.  Thus, Mr. Allen is currently facing a sentence for an offense for which he was not indicted.

**2.    Mr. Allen's grand jury did not consider any aggravating circumstance and did not specify any in the indictment.  Thus, Mr. Allen was never charged with capital murder.**

*Alleyene* further recognized the "well-established practice of including in the indictment, and submitting to the jury, every fact that was a basis for imposing or increasing punishment." 570 U.S. at 109-10.  Historically, the requirement that an indictment contain every allegation that was necessary to punishment was a fundamental requirement to provide the defendant with the opportunity to prepare a defense to the punishment he faced.  *Id.* at 110.  "It also preserves the historic role of the [grand] jury as an intermediary between the [government] and criminal defendants."  *Id.*

The Fifth Amendment was enacted in "recognition of the fact that the intervention of a grand jury was a substantial safeguard against oppressive and arbitrary proceedings."  *Smith*, 360 U.S. at 9.  Deprivation of this "basic right" to be tried only on charges returned by a grand jury is "serious": "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."  *Stirone v. United States*, 361 U.S. 212, 218 (1960).

The grand jury's indictment of Mr. Allen did not include any aggravating circumstances that could have constituted the crime of capital murder.  *Allen*, 406 F.3d at 941.  Rather, the government simply filed a notice of the aggravating circumstances they intended to use in support of a death sentence.  *Id.*  Such notice, however, is no substitute for the Fifth Amendment's grand jury requirement.  *See Smith*, 360 U.S. at 13-14.  This procedure violated the Fifth Amendment's grand jury requirement.  *Allen*, 406 F.3d at 943.

In order for a person to be "held to answer for a capital crime" under the Fifth Amendment, the charging instrument must contain the allegations necessary to expose him to capital punishment.  *Matthews v. United States*, 622 F.3d 99, 102-03 (2d Cir. 2010).  "A

4

charging instrument that alleges no aggravating elements authorizing capital punishment does not do so." *Id.* at 103. Here, the indictment alleged no aggravating elements authorizing capital punishment. Therefore, while it might have charged non-capital offenses under § 2113 and § 924 that could be punished by a life sentence or a term of years, it did not and should not have exposed Mr. Allen to the unlawful sentence of death to which he continues to be subjected.

**3.    The Fifth Amendment does not allow the execution of a sentence for a crime that was never charged.**

Deprivation of the Fifth Amendment's right to an indictment by grand jury is "far too serious to be treated as nothing more than a variance and then dismissed as harmless error." *Stirone*, 361 U.S. at 217. *Stirone* explained that the grand jury right cannot be taken away with or without court amendment. *Id.* at 215-16. A conviction on a charge the grand jury never made against a defendant is "fatal error." *Id.* at 219. *See also Ex Parte Bain*, 121 U.S. 1, 10 (1887) ("If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance" of the grand jury right would be "almost destroyed.").

Only the grand jury can decide whether "to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense." *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986). Mr. Allen's grand jury did not charge him with capital murder, and thus the charges on which it indicted him could only be punished by a life sentence or a number of years. *See Smith*, 360 U.S. at 14 (Clark, J., concurring in part) (where government did not comply with the indictment requirements for a capital offense, the only potential penalty was a sentence of life or a term of years).

5

**4.      The Eighth Circuit's harmless error ruling conflicts with *Alleyne*.**

The Eighth Circuit opinion affirming Mr. Allen's death sentence recognized that the Supreme Court's decision in *Ring* did not address the grand jury requirement of the Fifth Amendment. *Allen*, 406 F.3d at 942. While the Eighth Circuit recognized that *Stirone* and *Bain* supported Mr. Allen's argument that the Fifth Amendment error was structural and not subject to harmless error analysis, it nevertheless held that "the Supreme Court had not yet grappled with the question whether constitutional error can be harmless." *Id.* at 944. Conducting its own analysis of the law, the court decided that the Fifth Amendment error was not structural, but was harmless. *Id.* at 945, 948.

Shortly thereafter, the Supreme Court granted certiorari to address "whether the omission of an element of a criminal offense from a federal indictment can constitute harmless error" in *United States v. Resendiz-Ponce*, 549 U.S. 102, 103 (2007). However, the Court ultimately resolved the case without addressing that issue. *Id.* at 104. Justice Scalia dissented, recognizing that the Court would eventually have to address this important question. *Id.* at 117. He concluded that the grand jury error, like the one here, was structural. *Id.*

*Alleyne* showed that the Eighth Circuit got it wrong. *Alleyne* validated the historical practice of requiring the indictment to contain "every fact that was a basis for imposing or increasing punishment." 570 U.S. at 109-10. Just as aggravating circumstances are facts required to increase the penalty for some murders from life to death, *Alleyne* found that the same principles apply to facts that allow for an increase in a mandatory minimum sentence. Including those facts in the indictment enables a defendant to predict the legally applicable penalty from the face of the indictment. *Id.* at 113-14. The facts necessary to aggravate punishment form a new offense, *id.* at 114-15, that must be charged in the indictment.

*Alleyne* rejected the idea that any such error could be harmless. "It is no answer to say that the defendant could have received the same sentence with or without that fact." *Id.* at 115. Because the aggravating facts in *Alleyne* had not been submitted to the jury, the Court found a Sixth Amendment violation and granted relief without conducting any harmless error review. *Id.* at 117-18. *Alleyne* makes clear that the same analysis is applicable to the Fifth Amendment's indictment requirement, but the Eighth Circuit wrongly applied a harmless error analysis to the Fifth Amendment error in Mr. Allen's case. *See United States v. Farr*, 536 F.3d 1174, 1184-85 (10th Cir. 2008) (Gorsuch, J.) (Fifth Amendment violation resulting from constructive amendment of the indictment was reversible error *per se* without any further showing of prejudice).

In *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1913 (2017), the Court held that where "a structural error is preserved and raised on direct review, the balance is in the defendant's favor, and a new trial generally will be granted as a matter of right." Mr. Allen objected at trial and preserved these structural error claims on appeal. Therefore, he is entitled to have his conviction and death sentence reversed, and be granted a new trial.

5. **The Eight Circuit's harmless error analysis constructively amended the indictment in violation of the Fifth Amendment.**

The harmless error test applied by the Eighth Circuit asked if a reasonable grand jury would have found aggravating circumstances if they had been asked. *Allen*, 406 F.3d at 945. Because, as explained above and as *Alleyne* makes clear, those aggravating circumstances function as elements of a different crime, the Eight Circuit speculated whether the grand jury would have indicted Mr. Allen on a different crime. The court's affirmative answer expanded the indictment to include that other crime. Such expansion was an unconstitutional constructive

amendment to the indictment that the grand jury had actually returned. *See Farr*, 536 F.3d at 1176.

A defendant may be tried for a felony only on the charges the grand jury approved, as it approved them, and no others. *United States v. Leichtnam,* 948 F.2d 370, 375 (7th Cir 1991); *Farr*, 536 F.3d at 1180. The grand jury has the exclusive power to determine the charges. Once it has done so, neither a prosecutor nor a judge may "change the charging part of an indictment" to add charges that the grand jury did not include. *Leichtnam*, 848 F.2d at 376.

The Eighth Circuit's conclusion that the grand jury would have authorized a different offense if it has been asked to do so violates these fundamental principles. The grand jury right enshrined in the Constitution would be "frittered away" and have little value, "[i]f it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes. . . . " *Bain*, 121 U.S. at 10. Any broadening of the possible bases for conviction beyond than those appearing in the indictment is a fatal error. *United States v. Miller*, 471 U.S. 130, 143 (1985). It is reversible per se. *Stirone*, 361 U.S. at 217. *See also United States v. Willoughby*, 27 F.3d 263, 265 (7th Cir.1994) (evidence or instructions that allow a jury to convict on an offense other than the one charged is a constructive amendment to the indictment and is *per se* reversible error).

Mr. Allen's indictment was also constructively amended in other ways affecting the trial as well as his death sentence. In itss opening statement to the jury, the government constructively amended the indictment by informing both the jury and Mr. Allen for the first time that it planned to introduce as evidence a 12-gauge shotgun that was not charged in the indictment and was never used in the crime. Tr. 2/17/98 at 11-12; 15-16, 38. In closing, the prosecutor again emphasized the possession and use of the shotgun as part of the plan. Tr. Vol.

12 at 31, 34, 43-44.  Because the shotgun was not charged in the indictment, the prosecution's argument and introduction of the shotgun, along with instructions to the jury allowing it to consider the shotgun, impermissibly broadened the basis the jury could have relied upon to convict.

An indictment has been impermissibly amended when the jury is allowed to use a firearm not set forth in the indictment as a basis for conviction.  *See Leichtnam*, 948 F.2d at 380-81 (introduction of firearms not charged in the indictment impermissibly broadened the indictment). The same is true here.  While the indictment did not contain any reference to a shotgun, the prosecution introduced such a weapon and alleged it was part of the robbery plan, and the jury instructions allowed the jury to rely on the shotgun as the basis for its conviction.  As in *Leichtnam*, this was constitutional error.

> **6.    The trial court had no jurisdiction to sentence Mr. Allen to death where the grand jury had not indicted him on a capital offense, and the Eight Circuit had no jurisdiction to consider whether the grand jury would have indicted on a capital offense.**

A federal court has no jurisdiction, and thus no power, to sentence a defendant for a crime that was not charged in an indictment.  *Bain*, 121 U.S. at 13.  As discussed above, the indictment here lacked the essential elements required for a death sentence and did not charge Mr. Allen with a capital crime.  Thus, "[t]here was nothing before the court on which it could hear evidence or pronounce [a death] sentence."  *Id.* at 13-14.  The Eighth Circuit likewise had no power to conduct a harmless error analysis and affirm a sentence that lower court lacked jurisdiction to impose.

Petitioner recognizes that, in *United States v. Cotton,* 535 U.S. 625 (2002), the Supreme Court partially overruled the jurisdictional holding in *Bain* as it applied to a non-capital sentencing in which the defendants did not object to the absence of sentencing allegations in the

indictment.  *Id.* at 631.  Relying on *United States v. Williams*, 341 U.S. 56, 66 (1951), the Court held that defects in the indictment do not deprive a court of jurisdiction to hear *the case charged in the indictment.*  *Id.*

Cotton does not address the jurisdiction of a court to impose and implement a death sentence where the indictment has not charged defendant with a capital crime and where the defendant has properly objected at trial.  The grand jury requirement of the Fifth Amendment speaks directly and explicitly to capital charges: "No person shall be held to answer for a capital . . . crime" unless they are indicted for a capital offense.  Thus, while the grand jury requirement can be waived in a non-capital case, it cannot be waived in a capital case.  *Smith*, 360 U.S. at 9.

These differences control the outcome here.  The indictment did charge Mr. Allen with non-capital crimes and Mr. Allen does not challenge the jurisdiction of the trial court "to determine the case presented by the indictment."  *Williams*, 341 U.S. at 66.  However, as Mr. Allen was never indicted for a capital offense, *Bain* teaches that the court had no jurisdiction to impose, implement, or execute a death sentence.  *Cotton* does not hold otherwise.

### 7.   Mr. Allen satisfies the savings clause.

A federal habeas petitioner is entitled to review under § 2241 when § 2255 is "inadequate or ineffective to test the legality of his detention" or sentence. 28 U.S.C. § 2255(e).  This standard is met when there is "a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem."  *Purkey v. United States*, 964 F.3d 603, 615 (7th Cir. 2020), *stay vacated*, No. 20A4, 2020 WL 3988688 (U.S. July 15, 2020). The Seventh Circuit has recognized that "whether section 2255 is inadequate or ineffective depends on whether it allows the petitioner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence."  *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc) (quotation omitted).  In other words, "there must

be some kind of structural problem with section 2255 before section 2241 becomes available." *Id.*

In *Fulks v. Krueger*, No. 2:15-cv-00033, 2019 WL 4600210, *2 (S. D. Ind. Sept. 20, 2019), this Court recognized that Congress created the savings clause to serve as a "safety hatch." (quoting *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998)). Use of § 2241 is permissible where it "appears that that the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of [] detention." 28 U.S.C. § 2255(e). This standard is met when there is "a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem." *Purkey*, 964 F.3d at 615; *Lee v. Watson*, 964 F.3d 663, 666 (7th Cir. 2020) (same, citing *Purkey*).

In *Webster,* the Seventh Circuit rejected the "'Kafkaesque' nature of a procedural rule that, if construed to be beyond the scope of the savings clause, would (or could) lead to an unconstitutional punishment." *Id.* at 1139. It accordingly recognized that there was a "structural problem" preventing Webster from bringing a second § 2255 motion and granted him § 2241 review. *Id.* at 1136, 1139. "To hold otherwise," the court explained, "would lead in some cases . . . to the intolerable result of condoning an execution that violates the Eighth Amendment." *Id.* at 1139. As a general matter, the § 2255 remedy is "inadequate or ineffective" "when it cannot be used to address novel developments in either statutory or constitutional law, whether those developments concern the conviction or sentence." *Roundtree v. Krueger*, 910 F.3d 312, 313 (7th Cir. 2018). *See also Chazen v. Marske*, 938 F.3d 851, 861 (7th Cir. 2019) ("[A] petitioner seeking relief under § 2241 need only show that the case on which he relies had not yet been decided at the time of his § 2255 petition.") (citing *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)).

In this case, § 2255 was inadequate to challenge the implementation, and imposition, of Mr. Allen's death sentence.  Under Eighth Circuit law, § 2255 is only available for issues that could not have been raised on direct appeal.  *United States v. Aptel,* 97 F.3d 1074, 1076 (8th Cir. 1996).  Claims that were raised unsuccessfully on direct appeal cannot be raised in a motion to vacate under § 2255.  *Sun Bear v. United States,* 644 F.3d 700, 702 (8th Cir. 2011) (en banc); *Dall v. United States*, 957 F.2d 571 (8th Cir. 1992).[2]

These principles are a structural barrier to Mr. Allen's ability to obtain § 2255 review.  In *Beason v. Marske*, 926 F.3d 932, 937 (7th Cir. 2019), the Seventh Circuit held that a § 2241 petitioner had been "actually foreclosed" from raising an argument in § 2255 proceedings, where the argument had been rejected on direct appeal and the law of the case precluded relitigation of the same issue in a collateral proceeding.  It did not matter that the argument advanced on direct appeal was "a bit different" than the argument raised in the § 2241 petition, where the general contention was the same.  *Id.*  The court reasoned that a petitioner in this situation, "[a]s a practical and legal matter . . . needed a superseding development," such as an intervening judicial decision, to receive renewed consideration of the argument.  *Id.*

This case fits easily within *Beason.*  Mr. Allen preserved a challenge to the adequacy of the indictment at trial and raised a grand jury issue on direct appeal.  The Eighth Circuit found that there was Fifth Amendment error because the indictment did not contain any aggravating circumstances necessary to a capital prosecution.  *Allen*, 406 F.3d at 943.  Nevertheless, the Court found the error harmless, and thus affirmed a death sentence even though Mr. Allen was never charged with a capital crime.  *Id.* at 949.  *Alleyne* was a superseding development after Mr. Allen's direct appeal, and shows that the application of a harmless error analysis was

---

[2] In the Seventh Circuit, relitigation of claims raised on direct appeal is generally barred by the law of the case doctrine.  *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004).

constitutionally wrong.  However, established Eighth Circuit law precluded Mr. Allen from re-litigating this issue in § 2255 proceedings.[3]  He has thus met the requirements of the savings clause, and is entitled to review under § 2241.

This is particularly true given that the Eighth Circuit opinion itself created constitutional error by constructively amending the indictment to include a capital charge.  Section 2255 provides no basis to challenge the constitutionality of a court's ruling on direct appeal.  Section 2241 is Mr. Allen's only available vehicle to challenge the constitutionality of his sentence.

In addition, § 2241 review is available because Mr. Allen's Fifth Amendment claim challenges the jurisdiction of the trial court to impose a death sentence.  As discussed, *supra, Bain* commands that the grand jury's failure to charge Mr. Allen with a capital crime deprived the trial court of jurisdiction to sentence him to death.  The Supreme Court has held that jurisdictional challenges can be raised at any time.  *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("Subject-matter jurisdiction can never be waived or forfeited.  The objections may be resurrected at any point in the litigation[.]").  Since § 2255 review is not available here, § 2241 review is an appropriate vehicle to challenge the trial court's jurisdiction to impose a death sentence.

**8.      Section 2241 is available because Mr. Allen is challenging the execution of a sentence.**

In addition to challenges made under the savings clause, § 2241 is the appropriate vehicle where a petitioner challenges the execution, as distinct from the imposition, of the sentence. *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003); *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998) ("A motion seeking relief on grounds concerning the execution but not the

---

[3] In § 2255 proceedings, Mr. Allen did unsuccessfully raise a claim for ineffective assistance of appellate counsel for failing to adequately argue that the grand jury error was structural.  *See Allen v. United States*, No. 4:07-CV00027-ERW, 2011 WL 1770929, at *46–47 (E.D. Mo. May 10, 2011).

validity of the conviction and sentence . . . may not be brought under § 2255 and therefore falls into the domain of § 2241.").

In considering the availability of § 2241, courts should "take into account the fact that a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence." *Webster*, 784 F.3d at 1139; *see also Davenport*, 147 F.3d at 611 (§ 2241 used to rectify conviction for "nonexistent offense"). The enduring theme throughout these cases is that § 2241 was designed "to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Id*. at 609.

In this case, Mr. Allen challenges the execution as well as the imposition of his death sentence. He has been unlawfully classified as a prisoner under sentence of death and has thus been subject to the harsh restrictions on condemned prisoners, including strict limits on his time outside his cell, limited opportunity to work or participate in educational or vocational programming, limited recreation time, and limited visitation and contact with family. Moreover, he has been under constant threat that a date for his execution could be set at any time. Because these conditions are the result of a sentence for a crime with which he was never charged, i.e., capital murder, they are unconstitutional and subject to review under § 2241.

Mr. Allen's indictment claims relate to the execution of his continuous death sentence and the possibility of his execution where such a punishment was never authorized. Thus, § 2241 is the appropriate vehicle to raise such claims in order to "prevent a custodian from inflicting an unconstitutional sentence." *Webster*, 784 F.3d at 1139.

Other courts of appeals have held that similar claims fall within the purview of § 2241. In *Moody v. Holman*, 887 F.3d 1281 (11th Cir. 2018), the defendant, under a warrant of execution, argued that he should be transferred to federal custody to serve out his life sentence before Alabama should be allowed to execute him. The Eleventh Circuit, although denying

14

relief on the merits, held that his claim was properly brought under § 2241. In so holding, the court rejected the district court's conclusion that the petition constituted a second or successive petition that should have been brought under § 2254. *Id.* at 1283. According to the Eleventh Circuit, Moody's claim addressed the execution of his sentences, "i.e. the manner of carrying out" his sentences, and not merely to their validity. *Id*. at 1288.

In *Sandusky v. Goetz*, 944 F.3d 1240 (10th Cir. 2019), a federal prisoner convicted of two marijuana-trafficking convictions filed a § 2241 habeas petition to claim that a congressional appropriations rider prevented the Bureau of Prisons from expending any funds to incarcerate him. The Tenth Circuit rejected the government's argument that Sandusky was precluded from pursuing his claim in a § 2241 petition because Sandusky had raised a nearly identical argument in his § 2255 motion. *Id*. at 1241. The court held that Sandusky was not precluded from relitigating this claim because the sentencing court correctly concluded that it was not cognizable in a § 2255 motion; in other words, challenges to the execution of a sentence are not cognizable under § 2255 and therefore the sentencing court lacked jurisdiction to consider it on the merits. *Id*.

Here, like the prisoners in *Moody* and *Sandusky,* Mr. Allen claims that the federal government should not be allowed to "carry out" a sentence for a crime that was not charged in the indictment. This challenge goes to the execution of his sentence, and the conditions of his confinement on federal death row. It is therefore cognizable under § 2241. *See Walker v. O'Brien*, 216 F.3d 626, 629 (7th Cir. 2000) ("28 U.S.C. § 2255, the habeas corpus substitute for federal prisoners, is properly used only for challenges to convictions and sentences, while § 2241 is used for other challenges to the fact or duration of confinement.").

15

**9.** **The Suspension Clause requires the Court to consider the petition.**

Section 2241 must be available to give substance to Mr. Allen's constitutional right to petition for a writ of habeas corpus. *See* U.S. Const. art. 1, § 9; *Webster*, 784 F.3d at 1139 & n.7 (interpreting § 2255(e)'s savings clause so as to avoid constitutional Suspension Clause problems).

The writ of habeas corpus is an indispensable mechanism for monitoring the separation of powers. The test for determining the scope of this provision must not be subject to manipulation by those whose power it is designed to restrain. *Boumediene v. Bush*, 553 U.S. 723, 765-66 (2008). Implicit in the writ is the federal courts' duty to check the power of Congress and the Executive branch to detain and punish individuals. Section 2241 gives this Court the power to review Mr. Allen's claims. *See Resendiz-Ponce,* 549 U.S. at 17 (Scalia, J., dissenting) (noting the need to determine whether an indictment error such as the one here can be harmless, and concluding that it cannot). Without such review, Mr. Allen has no other mechanism to challenge a sentence imposed for a crime for which he was never indicted, and the Suspension Clause would be violated. As *Weaver* held, a new trial should be granted where structural error was raised and litigated in the trial court and on appeal. 137 S. Ct. at 1413. This Court should enforce that directive.

WHEREFORE, Petitioner respectfully requests that this Court vacate his conviction and death sentence, as they were imposed for a crime for which he was not indicted. In the alternative, Petitioner requests that the Bureau of Prisons be permanently barred from carrying out his execution and from continuing to confine him on death row.

Given the importance of the questions raised by the petition, the government's response, and this reply, Petitioner requests that this Court schedule oral argument in order to give the parties the opportunity to answer any questions this Court may have.

Respectfully submitted,


/s/ Timothy Kane
Timothy Kane
Eric Montroy
Assistant Federal Defenders
Federal Community Defender Office
 for Eastern District of  Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
Fax: (215) 928-0826
Timothy_Kane@fd.org

Dated:  January 8, 2021

## Certificate of Service

I, Timothy Kane, hereby certify that on this 8th day of January, 2021, I filed the foregoing reply via the Court's electronic filing system, which system will serve a copy of the motion upon government counsel:

Brian L. Reitz
Unites States Attorney's Office
10 West Market Street
Suite 2100
Indianapolis, IN 46204

/s/ Timothy Kane
Timothy Kane
Eric Montroy
Assistant Federal Defenders
Federal Community Defender Office
 for Eastern District of  Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
Fax: (215) 928-0826