**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

**Case No. 2:20-cv-00406-JRS-MJD**

---

**BILLIE JEROME ALLEN,**

**Petitioner,**

**v.**

**WARDEN,**
**United States Penitentiary – Terre Haute,**

**Respondent.**

---

**PETITIONER'S MEMORANDUM ADDRESSING THE APPLICABILITY OF**
***JONES v. HENDRIX*, 143 S. CT. 1857 (2023)**

**INTRODUCTION**

Petitioner Billie Jerome Allen filed a Petition for Writ of Habeas Corpus, pursuant to 42 U.S.C. § 2241. As explained in his Reply to Respondent's Response to Petition, Doc. 20, Mr. Allen claimed that his conviction and death sentence are unconstitutional in violation of the Fifth Amendment because the grand jury indictment contained no allegation of an aggravating circumstance and, thus, he was never indicted by the grand jury for the crime of capital murder. Doc. 20 at 3-5. The application of a harmless error analysis by the United States Court of Appeals for the Eighth Circuit on direct appeal[1] was likewise constitutional error because it violated the Supreme Court's holding in *Stirone v. United States*, 361 U.S. 212, 215 (1960), that such error is structural and not subject to harmless error analysis.

---

[1] *United States v. Allen*, 406 F.3d 940, 943-44 (8th Cir. 2004).

1

In addition, the Eighth Circuit's ruling interjected yet another layer of constitutional error in that it constructively amended the indictment by speculating that the grand jury would have indicted on capital murder if it had been asked to do so. Doc. 20 at 6-9. *See Ex Parte Bain,* 121 U.S. 1, 10 (1887) ("If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance" of the grand jury right would be "almost destroyed.").

Mr. Allen further argued that the trial court had no jurisdiction to try him on a capital offense because the indictment had not charged him with a capital crime. Doc. 20 at 9-10. He asserted, *inter alia*, that this Court had jurisdiction to decide this matter because § 2241 is an appropriate mechanism to challenge the jurisdiction of the trial court to convict and sentence him in a capital case where the indictment did not present a capital charge. Doc. 20 at 13. Moreover, given the unique circumstances of this case, including the Eighth Circuit's unprecedented constructive amendment of the indictment through the application of a harmless error test on direct appeal, and Eighth Circuit law precluding any challenge to that ruling, Mr. Allen satisfied the savings clause of § 2255. Doc. 20 at 12-13.

On August 25, 2023, this Court, relying on the Supreme Court's recent decision in *Jones v. Hendrix*, 143 S. Ct. 1857 (2023), dismissed Mr. Allen's habeas petition for lack of jurisdiction and entered final judgment. *Jones* held that § 2241 was not available to an inmate who sought to raise a statutory interpretation claim that was not available at the time of his initial § 2255 litigation. Although recognizing that the issues and specific ruling in *Jones* were different from those presented here, Doc. 24 at 4, this Court read *Jones* to create a "universal rule" that precluded

jurisdiction under § 2241 whenever a federal prisoner had previously been denied relief under § 2255. *Id.*

This Court noted an exception to that "universal rule" "in cases where unusual circumstances make it impossible or impractical to seek relief in the sentencing court." Doc. 24 at 5. But this Court held that exception was limited to situations where the sentencing court had been dissolved, or the defendant could not otherwise appear. *Id.* This Court did not specifically address Mr. Allen's arguments concerning § 2241's applicability to his challenge to the trial court's jurisdiction.

Petitioner filed a Motion to Vacate Judgement, pursuant to F. R. Civ. P. 59, in which he requested leave to provide further briefing on the applicability of *Jones* to the unique facts of this case. On September 7, 2023, this Court issued an Order granting the request for further briefing and setting a briefing schedule. This Memorandum follows.

I. **_JONES_ DID NOT DIVEST THIS COURT OF JURISDICTION TO ADJUDICATE THE MERITS OF PETITIONER'S CLAIM THAT HIS TRIAL ON A CAPITAL CRIME WAS UNLAWFUL, UNCONSTITUTIONAL, AND WITHOUT JURISDICTION BECAUSE THE GRAND JURY INDICTMENT DID NOT CHARGE HIM WITH A CAPITAL CRIME**

The questions before this Court are straightforward, and rooted in the constitutional violation that both the Government and Eighth Circuit concede that "is clear" to have taken place. *United States v. Allen*, 406 F.3d 940, 943-44 (8th Cir. 2004). Did the trial court lawfully try Mr. Allen on capital charges and impose a sentence of death, where the indictment did not charge a capital crime and, if not, does this Court have jurisdiction under § 2241 to remedy that error? For the reasons detailed below, the first answer is no, the trial court did not have jurisdiction, and the second answer is yes, this Court does have jurisdiction to review Mr. Allen's claims and grant relief. *Jones* does not mandate a contrary result.

### A. The *Jones* Decision

In *Jones,* the Supreme Court defined its holding: "we hold that § 2255(e)'s saving clause does not permit a prisoner asserting an intervening change in statutory interpretation to circumvent AEDPA's restrictions on second or successive § 2255 motions by filing a § 2241 petition." *Jones,* 143 S. Ct. at 1864. This relatively narrow holding does not address, let alone dictate, the issues raised in this case.

Nevertheless, as this Court recognized, the reasoning underlying this holding was broader and imposed substantial limits on a district court's § 2241 jurisdiction. Although Congress intended the vast majority of collateral attacks to be brought under § 2255, Congress enacted a savings clause that allowed some collateral attacks to be brought under § 2241, where the remedy under § 2255 was "inadequate or ineffective" to test the legality of a federal prisoner's detention.

The *Jones* Court explained that "[t]raditionally, courts have treated the saving clause as covering unusual circumstances in which it is impossible or impracticable for a prisoner to seek relief from the sentencing court." 143 S. Ct. at 1866. The Court mentioned two such examples: when the sentencing court has been dissolved or where it is impractical to transport a prisoner to the sentencing court. *Id.*

This Court seemed to read *Jones* as suggesting that those two examples are the only situations in which the savings clause might apply. Doc. 24 at 5. This would be a manifest error of law. As the *Jones* Court explicitly recognized, "[a]fter AEDPA, as before it, the saving clause preserves recourse to § 2241 in cases where unusual circumstances make it impossible or impracticable to seek relief in the sentencing." *Jones,* 143 S. Ct. at 1868.

4

Because Congress exercised its authority to exclude non-constitutional statutory claims from being the subject of a second or successive § 2255 motions, petitioner's non-constitutional claims at issue in *Jones*, though barred by § 2255, did not meet the savings clause. *Id.* at 1869.

Mr. Allen's case is different. Mr. Allen presents constitutional and jurisdictional claims challenging the jurisdiction of the trial court and the constitutional error committed by the appellate court on direct appeal. These are highly unusual circumstances in which recourse to the sentencing court is precluded because the sentencing court had no jurisdiction to try Mr. Allen on a capital offense and because the appellate court's constitutional error could not have been raised in the initial § 2255 proceeding.

**B. Habeas Review Has Been Historically Available to Federal Prisoners Who Raise Jurisdictional Challenges**

Jurisdictional requirements mark the bounds of a "court's adjudicatory authority," *Kontrick v. Ryan*, 540 U.S. 443, 445 (2004). As the government has previously conceded, it failed, either by accident or intentionally, to present the necessary statutory aggravating factors to Mr. Allen's grand jury, or to otherwise seek the grand jury's authorization to turn his non-capital case into a capital one. This error prevented the government from conducting their prosecution as a capital one in nature and effect, and prevented the sentencing Court from exercising their jurisdiction "to hear the case." *Smith v. United States*, 360 U.S. 1, 10 (1959). In *Smith*, the Court held that "[u]nder our view of Rule 7(a), the United States Attorney did not have authority to file "an information and that any waivers made of the indictment requirement" did not confer power on the convicting court to hear the case." *Id.* (citing *Ex parte Wilson*, 114 U.S. 417 (1885)). In the same way here, the government had no authority to file a Notice of Intent to Seek the Death Penalty that sought to identify the aggravating circumstances that had not been included in the indictment and such a filing "did not confer power on the convicting court to hear the case." *Id.*

Habeas has long been available to prisoners seeking to challenge the jurisdiction of the court in which they were tried and sentenced. "A habeas court could grant relief if the court of conviction lacked jurisdiction over the defendant or his offense." *Brown v. Davenport*, 142 S. Ct 1510, 1522 (2022). *See Ex Parte Siebold,* 100 U.S. 371 (1880) (habeas relief is available to challenge whether the convicting court had jurisdiction over the person or the cause).

In this case, Mr. Allen has used the traditional process of habeas corpus to challenge the jurisdiction of the convicting court. As discussed in more detail below, Mr. Allen argued because the indictment did not charge him with a capital offense, the convicting court had no jurisdiction to try or sentence him for a capital offense. Doc. 20 at 9-10. Relief should have been granted on direct appeal once the Eighth Circuit concluded that the Fifth Amendment had been violated. But the Eighth Circuit, instead, constructively amended the indictment to include a capital charge by finding the error harmless after speculating about what the grand jury might have done if they had been asked to do so. This created yet another layer of constitutional error, but § 2255 provided no opportunity to challenge the convicting court's jurisdiction because of the appellate court's constitutional error on direct appeal.

There can be no question that these facts present highly unusual circumstances. Nor can it be doubted that § 2255 was inadequate and ineffective to address these jurisdictional and constitutional issues. Mr. Allen invoked § 2241 to exercise his traditional rights to seek habeas relief by challenging the jurisdiction of the convicting court. There is nothing in § 2255 that evidences Congress' intent to extinguish that traditional challenge. And *Jones* did not create any new barriers that Congress did not enact.

### C. The Trial Court Lacked Jurisdiction to Try Mr. Allen For the Crime of Capital Murder

"[I]t is clear that Allen's indictment suffers a Fifth Amendment defect." *United States v.*

6

*Allen*, 406 F.3d at 943.  The Fifth Amendment provides, in pertinent part, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."  Billie Allen was never indicted on a capital offense.  The indictment against him did not include any aggravating circumstances that form the elements of a capital murder.  Thus, the indictment returned by the jury only included charges of non-capital murder, which is a different offense than capital murder.

The Fifth Amendment was enacted in "recognition of the fact that the intervention of a grand jury was a substantial safeguard against oppressive and arbitrary proceedings." *Smith,* 360 U.S. at 9.  Deprivation of this "basic right" to be tried only on charges returned by a grand jury is "serious": "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."  *Stirone v. United States,* 361 U.S. 212, 217-18 (1960).

Deprivation of the Fifth Amendment's right to an indictment by grand jury is "far too serious to be treated as nothing more than a variance and then dismissed as harmless error." *Id*. at 217.  *Stirone* explained that the grand jury right cannot be taken away with or without court amendment. *Id.* at 215-16.  As such, a conviction on a charge the grand jury never made against a defendant is "fatal error." *Id.* at 219.

     1.     **Capital murder is a different crime than non-capital murder because aggravating circumstances function as elements of the crime of capital murder**

In *Alleyne v. United States,* 570 U.S. 99 (2013), the Supreme Court, after reviewing the history of the relationship between crime and punishment, recognized that "[i]f a fact was by law essential to the penalty, it was an element of the offense." *Id.* at 109.  "When

a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense…" *Id.* at 114-15.

Because the finding of an aggravating circumstance is a necessary requirement for making a defendant eligible for a death sentence, it is a part of a new offense (capital murder) and not merely a sentencing factor relating to the lesser offense (murder). *Id.* at 115-16 ("The essential point is that the aggravating fact produced a higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime."); *see also Sattazhan v. Pennsylvania,* 537 U.S. 101, 112 (2003) (murder plus one or more aggravating circumstances is a separate offense from murder *simpliciter*); *Ring v. Arizona,* 536 U.S. 584, 609 (2002) (aggravating circumstances function as elements of a greater offense). As such, an indictment, devoid of allegations of aggravators and intent factors, does not charge a capital offense under federal law.

Based solely on the indictment against him, which did not contain any aggravating circumstance, Mr. Allen could only be tried and sentenced for non-capital murder. The elements of capital murder, which could have subjected him to a possible death sentence, were never charged. Thus, Mr. Allen is currently facing a sentence for an offense for which he was not indicted.

> **2.** **The trial court had no jurisdiction to conduct a capital trial and impose a capital sentence**

A federal court has no jurisdiction, and thus no power, to convict or sentence a defendant for a crime that was not charged in an indictment. *Bain,* 121 U.S. at 13. As discussed above, the indictment here lacked the essential elements required for a death sentence and did not charge Mr. Allen with a capital crime. Thus, "[t]here was nothing before the court on which it could hear evidence or pronounce [a death] sentence." *Id.* at 13-14.

An indictment's failure to charge an offense constitutes a jurisdictional defect. *United States v. Henry*, 288 F.3d 657, 660 (5th Cir. 2002). A defendant may raise an objection to the indictment's failure to charge an offense at any time. *United States v. Moreci*, 283 F.3d 293, 296 (5th Cir. 2002).

Petitioner recognizes that in *United States v. Cotton*, 535 U.S. 625 (2002), the Supreme Court partially overruled the jurisdictional holding in *Bain* as it applied to a non-capital sentencing in which the defendants did not object to the absence of sentencing allegations in the indictment. *Id.* at 631. Relying on *United States v. Williams,* 341 U.S. 56, 66 (1951), the *Cotton* Court held that such defects in the indictment do not deprive a court of jurisdiction to hear the case charged in the indictment. *Id.*

*Cotton*, however, does not address the jurisdiction of a court to try a defendant on a capital charge where no capital crime was charged in the indictment, or to impose and implement a death sentence where the indictment has not charged defendant with a capital crime and where the defendant has properly objected at trial. The grand jury requirement of the Fifth Amendment speaks directly and explicitly to capital charges: "No person shall be held to answer for a capital ... crime unless on a presentment or indictment of a Grand Jury . . ." The word "unless," intentionally used by the Founders, ensures that this procedural requirement and right must be followed to the letter, because it sets the limit of a trial court's jurisdiction to hear a capital case. The Fifth Amendment does provide specific exceptions to the grand jury requirement "in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger." But none of those exceptions are applicable here. By specifically identifying some exceptions, the authors precluded the government or the courts from creating other exceptions. Yet that is what happened here.

9

The language of the Fifth Amendment limits the power of the government and the courts to try a person on a capital offense. By limiting power and authority, the language creates a jurisdictional bar to prosecution that cannot be waived. Although the grand jury requirement can be waived in a non-capital case, it cannot be waived in a capital case. *Smith,* 360 U.S. at 9 ("Rule 7(a) recognizes that this safeguard may be waived, but only in those proceedings which are noncapital").

Yet, here, the courts have allowed Mr. Allen's Fifth Amendment rights to be waived, even as it tried him on capital charges. The trial court waived Mr. Allen's Fifth Amendment right over his objection by allowing a capital trial to go forward, even though no such charge was contained in the indictment. The Eighth Circuit not only endorsed that action, but applied a harmless error test which allowed that Court to waive Mr. Allen's rights by speculating what the grand jury might have done if it had been asked. These waivers are nothing short of a judicial effort to create jurisdiction the courts did not constitutionally have.

In this case, the indictment did charge Mr. Allen with non-capital crimes and *Bain* teaches that the trial court had no jurisdiction to try him on a capital charge and to impose, implement, or execute a death sentence. The non-capital indictment brought against Mr. Allen "did not confer power on the convicting court to hear the [capital] case." *Smith*, 360 U.S. at 10. *Cotton* does not hold otherwise.

Neither does *United States v. Muresanu*, 951 F.3d 833 (7th Cir. 2020). There, the indictment charged the defendant with attempted identity theft, which was a non-existent offense. The defendant did not object to the defect in the indictment, but nevertheless raised a challenge to the trial court's jurisdiction on appeal. The Seventh Circuit, applying *Cotton*, held that the error was not jurisdictional, concluding that "defects in an indictment do not deprive the court of subject-

10

matter jurisdiction, and this is so even when the defect is a failure to state a federal offense." *Id.* at 839. As a result, the defendant waived his challenge to the indictment by not objecting prior to trial. *Id.*

Mr. Allen, by contrast, objected at trial and never waived his objection to a capital trial that had not been charged in the indictment. Moreover, the fact that this was a capital trial is of dispositive significance. The Fifth Amendment explicitly requires an indictment in capital cases and that specificity is jurisdictional, even if in non-capital cases it is not. Indeed, Fed. R. Crim. P. 7 does not allow a waiver of indictment in capital cases, though such waivers may be accepted in non-capital cases. *See United States v. Hartwell*, 448 F.3d 707, 718 (4th Cir. 2006) (defendant charged with capital crime cannot waive indictment). Such a distinction is consistent with the conclusion that the Fifth Amendment's requirement of an indictment in a capital offense is jurisdictional. Neither *Cotton* nor *Muresanu* addressed the jurisdiction to conduct a capital trial where no capital crime was charged.

Lastly, we return to *Stirone*, a case that still holds its potency today, and which dictates the result that should be reached here. There, the Supreme Court held that "because the court's admission of evidence and under its charge this might have been the basis upon which the jury convicted . . . [he] was convicted on a charge the grand jury never made against him. This was fatal error." *Stirone*, 361 U.S. at 219.

Allowing the jurisdictional defect in this case to stand would violate the Constitution, congressional intent, Rule 7(a), and Supreme Court precedent. This Court is not precluded from granting Mr. Allen relief from his unconstitutional and unlawful confinement. This Court should entertain its jurisdiction and reverse both the conviction and sentence.

11

**D.  This Court Has Jurisdiction Under § 2241 Because of the Unusual Circumstances**

The Eighth Circuit opinion affirming Mr. Allen's death sentence recognized that the Supreme Court's decision in *Ring* did not address the grand jury requirement of the Fifth Amendment.  *Allen*, 406 F.3d at 942.  While the Eighth Circuit recognized that *Stirone* and *Bain* supported Mr. Allen's argument that the Fifth Amendment error was structural and not subject to harmless error analysis, it nevertheless held that "the Supreme Court had not yet grappled with the question whether constitutional error can be harmless."  *Id.* at 944.  Conducting its own analysis of the law, the court decided that the Fifth Amendment error was not structural, but was harmless.  *Id.* at 945, 948.

The harmless error test applied by the Eighth Circuit asked if a reasonable grand jury would have found aggravating circumstances if they had been asked.  *Allen,* 406 F.3d at 945.  Because, as explained above and, as *Alleyne* makes clear, those aggravating circumstances function as elements of a different crime, the Eighth Circuit speculated whether the grand jury would have indicted Mr. Allen on a different crime.  The court's affirmative answer expanded the indictment to include that other crime.  Such expansion was an unconstitutional constructive amendment to the indictment that the grand jury had actually returned.  *See United States v. Farr,* 536 F.3d 1174, 1184-85 (10th Cir. 2008) (Gorsuch, J.) (Fifth Amendment violation resulting from constructive amendment of the indictment was reversible error *per se* without any further showing of prejudice).

The Eighth Circuit's conclusion that the grand jury would have authorized a different offense if it had been asked to do so violates these fundamental principles.  The grand jury right enshrined in the Constitution would be "frittered away" and have little value "[i]f it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been

12

called to suggested changes. . . ." *Bain,* 121 U.S. at 10. Any broadening of the possible bases for conviction beyond than those appearing in the indictment is a fatal error. *United States v. Miller*, 471 U.S. 130, 143 (1985). It is reversible *per se*. *Stirone,* 361 U.S. at 217; *see also United States v. Willoughby*, 27 F.3d 263, 265 (7th Cir. 1994) (evidence or instructions that allow a jury to convict on an offense other than the one charged is a constructive amendment to the indictment and is *per se* reversible error).

But Mr. Allen could not return to the sentencing court to challenge the Eighth Circuit's decision. That decision was binding upon the sentencing court. *Jones* recognizes that a federal prisoner can turn to § 2241 where unusual circumstances make it impossible or impractical to seek relief from the sentencing court. This is such a rare case because Mr. Allen had no other mechanism to challenge the Eighth Circuit's constructive amendment of the indictment. Claims that were raised unsuccessfully on direct appeal cannot be raised in a motion to vacate under § 2255. *Sun Bear v. United States*, 644 F.3d 700, 702 (8th Cir. 2011) (en banc); *Dall v. United States*, 957 F.2d 571 (8th Cir. 1992).

Mr. Allen is not aware of any other case in which a defendant was tried on capital charges even though the indictment did not charge a capital crime, objected to that error prior to trial, raised the issue on direct appeal, and the appellate court found a Fifth Amendment error, yet declared that error harmless by speculating about what the grand jury might have done if they had been asked. The rarity and uniqueness of this case is unprecedented, and the circumstances make it impossible to raise the issue in the sentencing court. Thus, this is the rare case in which, even under *Jones,* this Court has jurisdiction to decide the merits of Mr. Allen's § 2241 habeas petition.

**Conclusion**

For the foregoing reasons, Petitioner respectfully asks this Court to vacate its order and judgment dismissing his habeas petition, find that this Court has jurisdiction to address the merits of his claims, and grant him relief.

Respectfully submitted,

/s/ Eric Montroy
Eric Montroy
Assistant Federal Defender
Federal Community Defender Office
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
Fax: (215) 928-0826
Timothy_Kane@fd.org
Eric_Montroy@fd.org

Dated: October 10, 2023

14

## Certificate of Service

I, Eric Montroy, hereby certify that on this 10th day of October, 2023, I filed the foregoing document via the Court's electronic filing system, which system will serve a copy of upon government counsel:

Brian Reitz
James R. Wood
Assistant United States Attorneys
10 West Market Street
Suite 2100
Indianapolis, IN 46204


/s/ Eric Montroy
Eric Montroy
Assistant Federal Defender
Federal Community Defender Office
  for Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
Fax: (215) 928-0826